Watson v. Guerra, 22-1364. Mr. Watson, come on up, please. Thank you. Just give Mr. Cervantes a second to clear his things. Okay, Mr. Watson. Good afternoon, panel. How are you doing? Good morning. Can you guys hear me clearly? Yeah, it would be helpful to be in front of both of those microphones together. Oh, yeah, that's great. How are you doing? If I told you that I thought it was supposed to be set to five minutes. Oh, yeah, sorry. You reserve one minute, I think, for rebuttal. So you have four minutes and then a minute for rebuttal. If I told you guys that I was prepared, you know, to be in a set of circumstances and in a position like this to talk in front of you today, I would be lying. Never did I set out or thought I would find myself in this position eight years ago, six months and 11 days to the date. Ultimately, I have throughout the course of this litigation, I've tried numerous times to make it clear that, you know, I did not resist arrest. I would never resist arrest. And in my mind and competence and culpability, I would never think that resisting arrest is a logical or plausible thing to do. You know, even the laws find that any form of resistance is unlawful. You know, I believe penal law. Thirty five. Twenty seven. I believe it was Oliver Wendell Holmes that said vengeance imports a feeling of blame and opinion, however, distorted by passion that a wrong has been done. It can hardly go very far beyond the case of a harm intentionally afflicted. Even a dog distinguishes between being stumbled over and being kicked. The early English appeals for personal violence seem to have been confined to intentional wrongs. I've been arrested for marijuana in the past. None of the arrests took place or rose to the level of assault and. Altercation at these cases that this individual case that I bring before you here today has. So, Mr. Watson, can I ask what do you think the district court did wrong? What was the what was one of the mistakes at trial that you want us to follow the course of discovery? And prior to summary judgment, you know, obviously, I tried to make the submission of many different types of documents that I thought would. Give me the clear indication that something wrong took place. A lot of those documents were not able to be admitted. I even tried to make interlocutory appeals and, you know, get a transfer of jurisdiction. I feel like the district court erred in a prolonging my case to be heard in front of a jury for so long. You know, understandably, I had, you know, El Chapo had to go before me. You know, obviously, I couldn't control COVID-19. So, Mr. Watson, I know that, as I understand it, you complain that you're appealing. The errors were not allowing you to get in certain records about statistics, about police and police statistics, some disciplinary histories, disciplinary action, not against the officer against the officers as well. Against the officers, but not Mr. Guerra, correct? Against Mr. Guerra as well, who there is- I do want to ask you a question about one of the claims you raise, that I think you're raising, was that the court didn't allow you to introduce pictures of your injury. But the court allowed you to introduce, to choose pictures, six pictures, I think, five or six pictures, five, and reminded you before the close of evidence, Mr. Watson. So, I'm asking-  No, no, no. We can't take evidence now. I'm just asking, why didn't you give the court those pictures, Mr. Watson? At the time that the pictures were being admitted, or I was given a chance to admit them, a witness was taking a stand. They're trying to have the jury, I guess, come into the room. So, simultaneously, as I'm trying to distinguish between which pictures to give three copies, because I have three copies of, I guess you could say, 100 pictures. I'm trying to make sure that I give each party the same pictures so that they can't say that they don't have the ones that are of merit and that I'm putting into evidence at that time. So, the jury's coming in, an officer's taking the witness stand. I'm trying to prepare all of these things simultaneously. And then the court proceeds to the next part, which is hearing the witness at that time, in which I was to cross-examine. So, the time and operation of space didn't allow me to submit the pictures. And then when I tried to submit them later in the court and during the proceedings, I wasn't able to. So, ultimately, the defendants or my opposition has had these pictures for over, and the courts have had these pictures for over five, close to four or five years at that point. So, not being able to admit them and not having the court be able to, and me be able to utilize them as some form of evidence, you know, I felt was an error in judgment. Not being able to include the disciplinary histories was, I believe, an error in judgment, as some of the histories and allegations brought mirrored the complaints of mind of a necessary force. May I ask a question, Mr. Watson? So, it appears, and there was some issue about what was in your opening brief and what was in your reply brief in response to the other side's brief, but it appears that you are mostly challenging. I'll put it that way. What happened during the trial? What you really thought happened was excessive force. Is that fair or is that wrong? I think excessive force happened. I think malicious prosecution to some degree happened because obvious facts and key material facts were omitted from the police reports that would have erred judgment either on the district attorney's behalf or maybe the agency's behalf in making and coming to other conclusions. You know, I think this very court has found numerous times that in front of a given address or place is not enough to establish the public place element, but that was what was put to describe my property in my driveway at that time, which I was clearly within the confines of. So, you've reserved a minute for rebuttal, as I said, but we've let you, in answer very helpfully to our questions, go on a little further. We'll hear from the lawyer for the other side, and then we'll hear from you. Is that fair? All right. Thank you, sir. Great. Counsel. Good morning, Your Honors, and may it please the court. Pauline Essman on behalf of police officer John Guerra. The district court in this case admitted and excluded certain evidence after which a jury returned a verdict in favor of Officer Guerra. Because the district court did not abuse its discretion in excluding and admitting those pieces of evidence, I would ask this court to affirm. As an initial matter, I just want to note that what is preserved for appeal are the evidentiary decisions of the district court. I know Mr. Watson mentions a couple of things, such as malicious prosecution, as well as the propriety of the arrest. Those were resolved at the summary judgment stage. Is that rule of ours a matter of discretion? About issue preservation? Yes. Well, issue preservation, more specifically, issue preservation in the context of a pro se litigant where, in the reply brief, there is, as I think you would acknowledge, some argument that preserves the malicious prosecution claim, for example. Yes, Your Honor. So in Terry v. Incorporated, Village of Pachogue, for example, which is the case of this court's, this court notes that in the context of a pro se appellant, the appellant needs to make identifiable arguments in their principal brief. I suppose that's to give the other side an opportunity to respond. So I'm not sure that simply discussing those issues in the reply brief would be sufficient to preserve them. And that case is in the context of a pro se appellant. On the evidentiary issues, I would just want to touch on two of those issues, unless this panel, of course, has any questions about the others. And that's the photographs, as well as the prior allegations of misconduct or the disciplinary history. So just briefly to touch on the photographs, I just want to clarify how this proceeded. So initially, the photographs were ruled on by the district court at the motion and limine stage. And the district court noted that Mr. Watson should choose five photos of any injuries to his face, as well as one each of any additional injury. Then at trial, the district court again, multiple times, noted to Mr. Watson, you need to pick those five pictures. And so Mr. Watson did receive multiple opportunities, both prior to trial and during trial. And I thought before the close of the evidence, the court reminded Mr. Watson, hey, you have not selected your pictures. Do you want to select your pictures to introduce them now? What happened then? What was the response? That's right, Your Honor. So the district court said that and also noted that this is your last chance to do so. And I believe Mr. Watson noted, I'm not going to be introducing any photos today. And then once the evidence actually closed, Mr. Watson said, I'd like to introduce those pictures now. And the district court said it's too late. On the prior allegations of misconduct, turning to that evidentiary issue, just one point of clarification. So the prior disciplinary histories or allegations of misconduct that were excluded were both ones against sergeant, then sergeant, now Captain Claxton's disciplinary history and Officer Guerra's. The district court excluded those because they were sought to be admitted for the purpose of showing propensity to commit excessive force. But regardless, that would be limited by Rule 403, even if there was some non-propensity purpose. And importantly here, just one of the things that I think makes the probative value of these allegations particularly minimal, is they were unsubstantiated complaints and Officer Guerra had no prior disciplinary history for excessive force. And if this court has no further questions as to the remaining issues on appeal, I'd rest on our brief and I would ask this court to affirm the judgment. Thank you very much. Mr. Watson. How you doing? As noted earlier, the court honestly did give me a chance to submit the pictures, but as I stated earlier- I'm sorry, Mr. Watson. You said the court did or did not? It did give me a chance to introduce the pictures during the course of trial. But as I said earlier, at that same moment in which it became the last opportunity, the jury's coming back in, the witness is on the stand, and the court transitioned from me being able to do that to me then cross-examining the witness. So I didn't have a chance to submit what I would need is three copies, one for the defendants, one for the court, and obviously one for the court deputy, and I didn't have a chance to separate all three. Look, Mr. Watson, I think everybody understands it's a tough thing to try a case as a non-lawyer. It's a tough thing even for a lawyer. But you didn't then seek to get them in until the case had been closed, until the evidence was closed. It was at that point. I tried numerous times, but I just didn't have the time or capacity to address some more issues that I had. The Court of Appeals, I believe, they preserve the issues in the case from up until summary judgment, up until I believe I received a document not too long ago that said because I sought to base my appeal, if not meeting the merits and standards of what I thought should be appealed throughout the trial, I sought to have it be preserved through the summary judgment. And from what I've seen, when a case comes to the Court of Appeals, that period of summary judgment automatically rolls over as the whole decision. So- I guess the issue is, did the district court, the trial judge, abuse his discretion by not allowing you to introduce these photos after the case had closed, after all the evidence had closed? Your argument is that it was abuse of discretion- If I'm sitting at the desk and he sees me going through the pictures to give to the opposition and to the court deputy, and then you transition to another part of the case trying to, I guess, streamline his flow, that is kind of erring in judgment, and it's not allowing me to operate in front of a jury that is competent and capable of making a- But there have been other- I mean, the court had given you notice that you needed to pick your photos and you had to show them to the other side if you want to get them in, right? Even before trial, this had been discussed, right? They made that final ruling on motion in the mind, I believe is- how do you say- Limine. I think we say limine. It's a silly Latin word. I like to say limine, but I wasn't sure how to say- Whatever floats your boat. They made that ruling the day before, so unless you're checking the record every day, I wouldn't have seen it, to be honest. Even the admission of the evidence that the court allowed on behalf of the defendants, the recording clip, which I also brought up in my appeal, how I had received no- But, I mean, maybe I'm wrong about this, but I thought the judge had warned you during the lunch break. Like, okay, you're going to have to- That was the transition, and as I'm picking out the pictures, I believe it's page 95, is it? I believe it's page 95 of the trial transcript. As I'm trying to separate the pictures, the witnesses are being admitted to the stand, and the jury is being allowed back in, and the court transitions straight into the next segment of the trial. So, I really had no space or time to really submit the pictures. Mr. Watson, thank you very much. Thank you and your friend on the other side for your candor and the clarity of your arguments today. Can I say one more thing? Of course, of course. Judge Kogan must have known that this case was going to go to this level because he left certain issues for higher authorities to clarify. Whether this case should have been brought in state court or federal court, whether I had most likely won that case or not, I most likely would have still tried to come to this forum to get reinserted certain issues in law that I would have rectified based upon my stance as a reasonable civilian in the moment that I was arrested. Okay. Thank you. Thank you very much. We'll reserve a decision. That means that you'll get a decision from us in due course at some point. And thank you again. Appreciate it.